UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

CHRISTOPHER REITER and )
TIFFANY NAPIER, )
 )
                    Plaintiffs, )
 )
          v. )          No. 4:22-cv-00127-SEB-KMB
 )
JAMEY NOEL, et al., )
 )
                    Defendants. )

**ORDER ON PENDING MOTIONS**

Plaintiffs Christopher Reiter and Tiffany Napier, proceeding *pro se*, have brought

this civil rights action pursuant to 42 U.S.C. § 1983 alleging various violations of their

civil rights by a long list of government actors.  Now before the Court are the Motion to

Dismiss [Dkt. 47] filed by Defendant Jeremy Mull; the Motion to Dismiss [Dkt. 49] filed

by Defendants Clarksville Police Department, Ryan Roederer, and Zachary Skaggs; the

Motion to Dismiss [Dkt. 53] filed by Defendants Floyd County Sheriff's Department,

Kenneth Haas, Troy McDaniel, and Brad Scott; and the Motion to Dismiss [Dkt. 60] filed

by Defendants Clark County Sheriff's Department, Laura Basham, Donnie Bowyer,

Randy Burton, Mark Collett, James Haehl, Bradley Kramer, Scott Maples, Jamey Noel,

and Jerold Tenney.[1]  We address each of the pending motions to dismiss in turn below.[2]

---

[1] In their complaint, Plaintiffs incorrectly spelled the surnames of Defendants Troy McDaniel
and Donnie Bowyer as "McDaniels" and "Boyer," respectively.  The clerk is directed to correct
the spelling of their names in the case caption to "McDaniel" and "Bowyer."
[2] In addition, currently pending is the Motion for Joinder in Argument Asserted by Clark County
Prosecutor Jeremy Mull [Dkt. 62] filed by Defendants Laura Basham and Donnie Bowyer, which

## Factual Background[3]

On August 14, 2020, Plaintiff Christopher Reiter's mother, Jade Passmore, informed him of his uncle's death and that he was the individual named to handle the estate.  After receiving this news, Mr. Reiter drove with Plaintiff Tiffany Napier to Florida to finalize the estate, attend to the distribution of property, and retrieve a Harley Davidson motorcycle and an Arising trailer that had been left to Mr. Reiter by his uncle.

Plaintiffs allege that, having completed those tasks and shortly after leaving Florida to return to their residence in Lanesville, Indiana, Ms. Passmore began threatening physical harm to Plaintiffs' horses and dogs which were accessible to her in Indiana if Plaintiffs did not bring the motorcycle and trailer to her.  Plaintiffs did not acquiesce in Ms. Passmore's demand, instead keeping the motorcycle and trailer at their Lanesville residence.  Plaintiffs allege that they reported Ms. Passmore's threats to the Clark County Sheriff's Department on August 23, 2020, but that no action was taken by law enforcement in response.

Two days later, on August 25, 2020, Plaintiffs again contacted the Clark County Sheriff's Department to report that Ms. Passmore was on their property and opening the gates to allow their horses to escape and attempting to pour antifreeze into the horses'

_____

motion is hereby <u>GRANTED</u>.  Also currently pending is Defendant Jeremy Mull's Motion to Strike Response [Dkt. 83], seeking to strike Plaintiffs' second amended response to his motion to dismiss.  Because Plaintiffs' second amended response was filed more than one month after Defendant Mull's reply brief was filed, without seeking leave of court to do so, and without explanation for the necessity of the belated filing, Defendant Mull's Motion to strike is hereby <u>GRANTED</u>.

[3] We have included in this section only those facts relevant to resolving the currently pending motions to dismiss.

drinking water.  During the police investigation that followed, Plaintiffs provided

documents to Defendant Randy Burton, a Clark County Sheriff's Deputy, evincing legal

possession of the motorcycle and trailer, and were told by Deputy Burton to follow Mr.

Reiter's uncle's will "as it read" and to "keep the motorcycle and trailer safe" at their

house in Lanesville.  Compl. ¶ 45.  Plaintiffs allege that, despite witnessing Ms.

Passmore's attempts to harm their horses, Deputy Burton failed to take any legal action

against her, instead merely advising Plaintiffs to "move all [their] animals away from

Jade Passmore in order to keep them safe," the effect of which direction "forced" Mr.

Reiter to "abandon[] his own property."  *Id.* ¶ 46.

Plaintiffs claim that an unknown individual subsequently reported to police that

Plaintiffs had stolen property and drugs in their possession, which led to a search warrant

being issued for their residence.  At approximately 8:30 p.m. on September 30, 2020,

while Plaintiffs were present at their residence, they claim that "something very heavy

slammed into their 'back' door."  Compl. ¶ 54.  When Mr. Reiter opened the door, he

discovered members of the Southeast Indiana Regional SWAT Team who were there to

execute a search warrant and had their firearms drawn and "pointed at his vital areas."  *Id.*

¶ 56.  According to Mr. Reiter, a firearm was discharged during the initial moments of

this encounter, but Plaintiffs' complaint does not identify which Defendant discharged the

firearm or whether the firearm was discharged in the direction of any individual.  Mr.

Reiter voluntarily placed his hands behind his back so that Defendant Troy McDaniel,

whom Plaintiffs identify as the Commander of the Southeastern Indiana Regional SWAT

Team, could handcuff him.

Plaintiffs allege that once Mr. Reiter was handcuffed, Defendant Donovan Harrod, a Clark County Sheriff's Deputy, approached Mr. Reiter, grabbed him, and began beating him, eventually throwing him to the ground and jumping on top of him. *Id.* ¶ 59–62. According to Plaintiffs' complaint, after Mr. Reiter was on the ground, two unnamed officers also jumped on him to "assist [Deputy] Harrod in beating Mr. Reiter …." *Id.* ¶ 63. Ms. Napier came out from inside the residence during this time and deployed her cell phone to record the ongoing events. Plaintiffs allege that Deputy Harrod used excessive force against Ms. Napier as well by "jerk[ing]" her arm down "with great and unnecessary force" in an attempt to take possession of her cell phone. Once Commander McDaniels became aware of these events, he "de-escalated the situation" by directing that "everyone … calm down" and by "putting his hand up to signify 'stop.'" *Id.* ¶ 68.

After the SWAT Team made entry into Plaintiffs' residence, Clark County Sheriff's Department investigators searched the home for nearly four and a half hours. Plaintiffs allege that they were both detained throughout the search, with Mr. Reiter remaining in handcuffs for approximately four hours. Plaintiffs further allege that law enforcement verbally harassed them during the search and denied their requests to provide Ms. Napier with necessary medical care. At the end of the search, law enforcement took the trailer and the motorcycle Plaintiffs had brought to Indiana from Florida as well as a second trailer and other property owned by Plaintiffs to the Clark County impound lot to be stored.

Approximately three weeks later, Mr. Reiter received a call from Defendant James Haehl, an employee at the Clark County Sheriff's Department, and Defendant Donnie

Bowyer, an employee of the Clark County Prosecutor's Office, informing Mr. Reiter that the property that had been taken from Plaintiffs' residence had been released and could be picked up at any time.  In response to Mr. Reiter's inquiry as to whether the storage fee could be waived, Mr. Bowyer informed him that the Clark County Sheriff's Department could waive the fees.  Mr. Bowyer also informed  Mr. Reiter that Defendant Jeremy Mull, the Clark County Prosecutor, had decided to release the property back to Mr. Reiter and would not be pursuing criminal charges against anyone.  Plaintiffs allege that before they were able to retrieve their property, it was taken by a third party to Ms. Passmore's residence.

On September 30, 2022, Plaintiffs filed their complaint pursuant to 42 U.S.C. § 1983 against twenty-six Defendants (all State or municipal actors and entities), alleging violations of Plaintiffs' First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Nineteen Defendants have moved to dismiss the claims brought against them.  We address those motions in turn below.

## Legal Analysis

### I.      Motion to Dismiss Standard

Each of the motions to dismiss has been filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In this procedural context, the Court accepts as true all well-pled factual allegations in the complaint and draws all ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009).  Nevertheless, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the

speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted).  The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2).  Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.    Overview of 42 U.S.C. § 1983

Before addressing the merits of the pending motions to dismiss, given Plaintiffs' *pro se* status, we shall provide a brief tutorial on the basic legal principles of § 1983 jurisprudence.

Section 1983 imposes liability on any "person" who, while acting under color of state law, violates an individual's federally protected rights.  In advancing such a claim, a plaintiff may sue a defendant in either his individual or official capacity.  Individual-capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law," *Hafer v. Melo*, 502 U.S. 21, 25 (1991), whereas official-capacity claims seek to impose liability on the governmental entity for whom the officer works, *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985).

Any government official sued in his or her individual capacity is liable "only if he [or she] personally caused or participated in a constitutional deprivation." *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 824 (7th Cir. 2022) (internal quotations and citation omitted).  This means a plaintiff cannot rely on a theory of respondent superior to hold a supervisor liable; instead, the plaintiff must show that the supervisor—through his or her

own conduct—violated the plaintiff's rights. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 619 (7th Cir. 2022). "[F]or a supervisor to be liable for the allegedly wrongful conduct of others, he [or she] must both (1) 'know about the conduct' and (2) facilitate, approve, condone, or turn a blind eye toward it." *Gonzalez v. McHenry Cnty., Ill.*, 40 F.4th 824, 828 (7th Cir. 2022) (quoting *Kemp v. Fulton Cnty.*, 27 F.4th 491, 498 (7th Cir. 2022)).

Local governments and municipalities may also be held liable for constitutional violations under § 1983, but only for their own actions; they cannot be liable solely because they employed a wrongdoer. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020) (en banc) (citing *Monell v. Dep't of Socs. Servs.*, 436 U.S. 658, 691 (1978)); *see also Milchtein*, 42 F.4th at 826 ("[A] municipal entity is not vicariously liable for the constitutional torts of its employees. Instead, a municipality may be liable only for conduct that is properly attributable to the municipality itself.") (internal quotations and citations omitted). A constitutional deprivation may be attributable to a municipality only "when execution of a government's policy or custom … inflicts the injury." *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008) (quotation marks and citation omitted). A plaintiff can show that a constitutional violation resulted from the execution of a municipal policy or custom in the following three ways: "(1) an express policy causing the loss when enforced; (2) a widespread practice constituting a 'custom or usage' causing the loss; or (3) a person with final policymaking authority causing the loss." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (citing *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004)).

It is well-established law that a § 1983 claim "against a government employee acting in his official capacity is the same as a suit directed against the entity the official represents." *Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999); *accord Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (recognizing that a claim brought against an individual in their official capacity is "in all respects other than name, to be treated as a suit against the [municipal] entity … for the real party in interest is the entity") (internal citation omitted). Thus, when a plaintiff brings a claim against a municipal entity under § 1983, to the extent the plaintiff alleges the same claim against a government official in his or her official capacity, such claim is duplicative and subject to dismissal. *Moreno-Avalos v. City of Hammond, Ind.*, No. 2:16-cv-172, 2017 WL 57850, at *2 (N.D. Ind. Jan. 4, 2017) ("If a plaintiff brings a suit against a government entity, any claim against an officer of that entity in his or her official capacity is redundant and should be dismissed.") (collecting cases).

Having provided this overview of the applicable background legal principles, we turn to the merits of the various motions to dismiss.

### III. Motion to Dismiss Filed by Defendant Jeremy Mull and Joined by Defendants Laura Basham and Donnie Bowyer in Their Official Capacities

Defendant Jeremy Mull, the Clark County Prosecutor, has moved to dismiss all Plaintiffs' claims against him on the following grounds: (1) Plaintiffs' allegations fail to satisfy the Rule 8 pleading standards; (2) Plaintiffs fail to allege his personal involvement in any constitutional deprivations and he cannot be held liable for acts of his co-defendants; (3) he is entitled to absolute prosecutorial immunity; and (4) he cannot be

8

sued under a *Monell* theory.  Defendants Laura Basham and Donnie Bowyer, who are both employees of the Clark County Prosecutor's Office, join Prosecutor Mull's *Monell* argument insofar as it applies to Plaintiffs' official capacity claims against them.

Even in making the required liberal construction, Plaintiffs' complaint fails to state a claim against Prosecutor Mull in his individual or official capacities.  Most significantly, Plaintiffs' complaint does not satisfy the basic pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure, which requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  The only allegations regarding Prosecutor Mull in Plaintiffs' 40-page complaint are that Mull made the decision to release Mr. Reiter's property to him after it had been impounded and that Prosecutor Mull did not pursue criminal charges against any individual in connection with the events described herein.  It is not clear, based on these meager factual allegations, what legal claim(s) Plaintiffs intend to bring against Prosecutor Mull.  Because Plaintiffs' complaint fails to describe the claim(s) against Prosecutor Mull "in sufficient detail to give the defendant 'fair notice of what the … claim is and the grounds upon which it rests,'" those claims must be and are hereby dismissed.  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

Moreover, to the extent Plaintiffs are alleging that Prosecutor Mull acted improperly by failing to initiate charges in connection with the events underlying this litigation, such allegations cannot form the basis of an actionable claim because he is entitled to absolute prosecutorial immunity for all acts taken within the scope of his

prosecutorial duties, which includes his charging decisions. *See Kalina v. Fletcher*, 522 U.S. 118, 129 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  In their response to Prosecutor Mull's motion to dismiss, Plaintiffs put forth new allegations against Prosecutor Mull that are not contained in their complaint, including, *inter alia*, that he intentionally withheld information and evidence from Plaintiffs to hinder this litigation; that he directed Defendant James Heahl to conduct an investigation and participated in that investigation; and that he directed the Clark County Sheriff's Department to execute the search warrant at Plaintiffs' residence.  Plaintiffs argue that, when Prosecutor Mull took these actions, he was acting not in his prosecutorial role, but as an investigator or law enforcement officer and thus is not entitled to absolute immunity for those acts. *See*, *e.g.*, *Bianchi v. McQueen*, 818 F.3d 309, 318 (7th Cir. 2016) (stating that a prosecutor's actions with respect to investigative tasks are entitled only to qualified immunity).  Even assuming these allegations were sufficient to state a plausible claim for relief against Prosecutor Mull, none of these allegations appears in Plaintiffs' complaint and "[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss…." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989).  Thus, Prosecutor Mull is entitled to dismissal of the individual capacity claims alleged against him.

To the extent that Plaintiffs are alleging official capacity claims against Prosecutor Mull and Defendants Basham and Bowyer, those claims also fail because the Prosecutor's Office "is an arm of the state" and these Defendants are therefore all state officials. *See Hendricks v. New Albany Police Dep't*, No. 4:08-cv-0180-TWP-WGH, 2010 WL

10

4025633, at *3 (S.D. Ind. Oct. 13, 2010) (collecting cases).  As the Seventh Circuit

recently reiterated, "[s]tates or state officials acting in their official capacities are simply

not 'persons' under § 1983 and therefore cannot be named as defendants in a suit under

that statute."  *Raney v. Wisconsin*, No. 21-1863, 2022 WL 110276, at *1, n.1 (7th Cir.

Jan. 12, 2022) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

Accordingly, Plaintiffs' § 1983 claims alleged against Defendants Mull, Basham, and

Bowyer in their official capacities must be dismissed.

### IV.    Motion to Dismiss Filed by Defendants Clarksville Police Department, Ryan Roederer, and Zachary Skaggs

Defendants Clarksville Police Department, Ryan Roederer, and Zachary Skaggs

(collectively, the "Clarksville Defendants") have each moved to dismiss the claims

alleged against them on the following grounds: (1) the Clarksville Police Department is

not a suable entity under § 1983; (2) Plaintiffs' complaint does not contain sufficient

allegations of personal involvement against Defendants Roederer or Skaggs for either of

them to be sued in their individual capacity; and (3) Plaintiffs' complaint does not allege

that any custom, policy, or practice was the cause of their constitutional injuries such that

Defendants Roederer or Skaggs can be held liable in their official capacities.  For the

following reasons, we hold that each of these arguments is well-taken and dismissal of

these claims is warranted.

### A.  *Monell* and Official Capacity Claims

Police departments such as the Clarksville Police Department are not suable

entities under § 1983.  *Chan v. Wodnicki*, 123 F.3d 1005, 1007 (7th Cir. 1997).  Rather,

the City of Clarksville is the proper suable entity for such a claim.  While we may assume

that the improper naming of the Clarksville Police Department is the equivalent of suing

the City of Clarksville, (*see Harris v. IMPD Indianapolis Metropolitan Police Dep't*, No.

2:13-cv-00310-JMS-MJD, 2013 WL 4602738, at *2 (S.D. Ind. Aug. 29, 2013) (citing

*Best v. City of Portland*, 554 F.3d 698, n.* (7th Cir. 2009)), Plaintiffs' claim still fails

given Plaintiffs' concession that there is "no[] specific policy, custom or practice

connected to any of the constitutional violations either Mr. Reiter or Ms. Napier suffer."

Dkt. 71 at 4.  Thus, Plaintiffs' official capacity claims against Defendants Roederer and

Skaggs, which are duplicative of the claims against the municipal entity, also fail.

**B.  Individual Capacity Claims**

Plaintiffs' individual capacity § 1983 claims against Defendants Roederer and

Skaggs fare no better.  As Defendants note, Plaintiffs' complaint alleges no specific facts

describing the personal involvement of Defendants Roederer or Skaggs in the alleged

constitutional deprivation.  *See Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)

("[I]ndividual liability under § 1983 requires personal involvement in the alleged

constitutional violation.") (quotation marks and citation omitted).  In response, Plaintiffs

argue only that Defendants Roederer and Skaggs should remain in this lawsuit because

there is a "probability" that they "were either one or both of the unnamed officers or that

they know the identity of the officer/s who was listed as an unnamed officer in their

complaint" and "future testimony and evidence may positively identify one or both [of

these] defendants as on[e] of the unnamed officers in this matter."  Dkt. 71 at 4.

Speculation such as this is not sufficient to state a plausible claim for relief under § 1983.

12

*See Vexol S.A. de C.V. v. Berry Plastics Plastics Corp.*, No. 3:15-cv-00055-TWP-MPB, 2016 WL 4506877, at \*5 (S.D. Ind. Aug. 29, 2016) ("Plaintiffs cannot use a threadbare complaint to justify conducting a fishing expedition in search of a viable cause of action.").

Alternatively, Plaintiffs argue for the first time in their response that Defendant Roederer and Skaggs can be held liable under § 1983 because they "failed to intervene or report the unlawful behavior." Dkt. 71 at 5. However, these allegations are not contained in Plaintiffs' complaint, and as noted above, it is well-established that a plaintiff may not amend their complaint by raising entirely new allegations or claims in response to a motion to dismiss. *See Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 972 (N.D. Ill. 2008) ("Plaintiff cannot amend his complaint by raising new claims in response to the motion to dismiss.") (citations omitted). Accordingly, Plaintiffs have failed to state a claim upon which relief may be granted against Defendants Roederer and Skaggs in their individual capacities.

## V.   Motion to Dismiss Filed by Defendants Floyd County Sheriff's Department, Kenneth Haas, Troy McDaniel, and Brad Scott

Defendants Floyd County Sheriff's Department, Kenneth Haas, Troy McDaniel, and Brad Scott have moved to dismiss Plaintiffs' claims against them on the following grounds: (1) the claims against the Floyd County Sheriff's Department and official capacity claims against the individual officers cannot proceed because there has been no allegation that a custom, practice, or policy of the Department or official policymaker caused Plaintiffs' constitutional deprivations; (2) Plaintiffs' complaint does not contain

sufficient allegations of personal involvement against Defendants Haas or Scott for either

of them to be sued in their individual capacity under § 1983; and (3) Plaintiffs' factual

allegations as to Defendant McDaniel are insufficient to state a § 1983 claim against him.

We address these arguments in turn below.

### A.   *Monell* and Official Capacity Claims

As discussed above, § 1983 claims against a governmental entity such as Floyd

County Sheriff's Department require proof that a municipal custom, practice, or policy

was the "moving force" behind the plaintiff's constitutional injury. *Estate of Sims v.*

*County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007).  Here, Plaintiffs' complaint alleges

only that the Floyd County Sheriff's Department is a law enforcement agency responsible

for ensuring the lawful practices of its employees, and that said employees acted through

the Floyd County Sheriff's Department.  Missing is any allegation that any custom,

practice, or policy of the Floyd County Sheriff's Department caused their claimed

constitutional harms.  Accordingly, Plaintiffs' claim against the Floyd County Sheriff's

Department must be dismissed.  Likewise, Plaintiffs' official capacity claims against

Defendants Haas, McDaniel, and Scott, which are duplicative of the claims against the

municipal entity, also fall short of the required standards.  *See Kentucky v. Graham*, 473

U.S. 159, 165–66 (1985) (recognizing that a claim brought against an individual in their

official capacity is "in all respects other than name, to be treated as a suit against the

[municipal] entity … for the real party in interest is the entity") (internal citation

omitted); *Moreno-Avalos v. City of Hammond, Ind.*, No. 2:16-cv-172, 2017 WL 57850, at

*2 (N.D. Ind. Jan. 4, 2017) ("If a plaintiff brings a suit against a government entity, any

14

claim against an officer of that entity in his or her official capacity is redundant and should be dismissed.") (collecting cases).

**B.     Individual Capacity Claims -- Defendants Haas and Scott**

Turning next to the individual capacity claims alleged against Defendants Haas and Scott, the only facts alleged in Plaintiffs' complaint against Haas and Scott are that they acted through the Floyd County Sheriff's Department and were under the command of Defendant McDaniel at all relevant times.  Neither Haas nor Scott is otherwise mentioned in Plaintiffs' complaint.  Given the dearth of facts to support an inference that either officer caused or participated in any unconstitutional conduct, Plaintiffs' individual capacity claims against them cannot survive dismissal.  *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.").

Plaintiffs attempt to resuscitate their claims against Defendants Haas and Scott by alleging new facts in their response in opposition to the motion to dismiss.  "The effort founders, however, because of the axiomatic rule that a plaintiff may not amend his complaint in his response brief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).  For these reasons, Plaintiffs have failed to state a claim upon which relief may be granted against Defendants Haas and Scott in their individual capacities.

**C.     Individual Capacity Claims – Defendant McDaniel**

15

Plaintiffs allege that all members of the Southeast Regional SWAT Team were under the command of Defendant McDaniels, and that, while under his command, various members of the SWAT Team violated Plaintiffs' Fourth Amendment rights when they used excessive force to execute the search warrant, despite encountering no resistance from Plaintiffs, including using a "ram" on the door, discharging a weapon, beating Mr. Reiter, and injuring Ms. Napier.  Plaintiffs further allege that Commander McDaniels violated Ms. Napier's Eighth Amendment rights by denying her medical care. We address these claims in turn below.

Commander McDaniel seeks dismissal of Plaintiffs' Fourth Amendment claim due to Plaintiffs' failure to allege that he was personally involved or individually responsible for any of the challenged conduct.  It is true that Plaintiffs do not allege that Commander McDaniel personally used any physical force against them.  However, a supervisory official may be personally liable under § 1983 "if the conduct causing the constitutional deprivation occurs at the official's direction or with his or her knowledge and consent." *Riley El v. Pritzker*, No. 19 C 02002, 2022 WL 4329030, at *2 (N.D. Ill. Sept. 19, 2022) (quoting *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019)).  This means the official must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye …." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quotation marks and citation omitted).

Here, Plaintiffs allege that after Mr. Reiter heard "something very heavy slam[]" into the back door of their residence, he opened the door to see "a large group of heavily armed SWAT Team Officer[s] pointing their guns directly at him, with the lasers pointed

16

at his vital areas," after which an unidentified SWAT officer discharged a firearm. According to the complaint, Mr. Reiter then "immediately" went down on his knees and extended his hands backward so that Commander McDaniels could handcuff him. Construing these allegations liberally, a reasonable inference arises that Commander McDaniels was present when the challenged conduct occurred and, through his participation in the execution of the search warrant in such a manner, thereby "facilitat[ed] …, approve[d] …, condone[d] …, or turn[ed] a blind eye," *Gentry*, 65 F.3d at 651, to use of the battering ram and discharging of the weapon.

However, to the extent Plaintiffs seek to hold Commander McDaniels liable for the excessive force allegedly used by Deputy Harrod and other unknown officers after Mr. Reiter was handcuffed and Ms. Napier was recording the incident, any such claim cannot survive dismissal.  Plaintiffs do not allege that Commander McDaniels himself used any level of force against them or that he directed those officers' actions or knew about their conduct and condoned or ignored it.  To the contrary, Plaintiffs specifically allege that, as soon as Commander McDaniels realized what was occurring, he promptly "de-escalated the situation."  Compl. ¶ 68.  Accordingly, no § 1983 claim can be asserted against Commander McDaniels stemming from the actions of Deputy Harrod and the unknown officers.

Defendant McDaniel next argues that Ms. Napier's Eighth Amendment claim for denial of medical care must be dismissed because the Eighth Amendment applies only to convicted prisoners, not pretrial detainees.  *See Armstrong v. Squadrito*, 152 F.3d 564, 570 (7th Cir. 1998) (holding that the Eighth Amendment "applies only to a convicted

prisoner rather than a pretrial detainee whose rights receive the protection of due process") (citation omitted).  It is true that, because Ms. Napier was a pretrial detainee, her claim for denial of medical care must be analyzed under the Fourteenth Amendment, not the Eighth.  *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018).  However, because a plaintiff is not required to plead the correct "legal theories or cases or statutes," *Shah v. Inter-Cont'l Hotel Chi. Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002), this mistake does not automatically doom her claim.

Although pretrial detainees "cannot enjoy the full range of freedoms of unincarcerated persons," *Tucker v. Randall*, 948 F.2d 388, 391 (7th Cir. 1991) (quotation marks and citation omitted), they are entitled to constitutionally adequate medical care. *Miranda*, 900 F.3d at 353–54.  To state a Fourteenth Amendment claim for denial of medical care, "a detainee must allege that the defendant acted 'with purposeful, knowing, or reckless disregard of the consequences' related to the provision of medical care, and that the medical care received, or the denial of medical care, was 'objectively unreasonable.'"  *Pangallo v. Wellpath*, No. 3:22-CV-383-DRL-MGG, 2022 WL 2390700, at *1 (N.D. Ind. July 1, 2022) (quoting *id.*).  Here, Ms. Napier alleges that Defendant McDaniel was present when she suffered an "obvious[,] immediate[, and] serious physical injury to her back and shoulder" as a result of allegedly excessive force used against her and that Defendant McDaniel "knowingly and intentionally" violated her constitutional right to adequate medical care by refusing Plaintiffs' repeated requests to provide her emergency medical attention despite being "fully aware" that an "immediate injury" existed.  Compl. ¶¶ 67, 83, 119.  Because Defendant McDaniel has put forth no

argument that these allegations are insufficient to state a Fourteenth Amendment claim

for denial of medical care, he is not entitled to dismissal of this claim.

**VI.    Motion to Dismiss Filed by Defendants Clark County Sheriff's Department, Laura Basham, Donnie Bowyer, Randy Burton, Mark Collett, James Haehl, Bradley Kramer, Scott Maples, Jamey Noel, and Jerold Tenny**

Defendants Clark County Sheriff's Department, Laura Basham, Donnie Bowyer,

Randy Burton, Mark Collett, James Haehl, Bradley Kramer, Scott Maples, Jamey Noel,

and Jerold Tenny have moved to dismiss the claims alleged against them on the following

grounds: (1) Plaintiffs have not alleged that a custom, policy, or practice was the cause of

their alleged constitutional deprivations sufficient to support a *Monell* or official capacity

claim against any of these Defendants; (2) Plaintiffs have failed to allege that Defendants

Noel, Maples, Tenney, Collect, and Basham had any personal involvement in the alleged

constitutional deprivations; and (3) the facts alleged against Defendants Haehl, Burton,

Kramer, and Bowyer do not plausibly state any legally cognizable § 1983 claims.  We

address these arguments in turn.

**A.    *Monell* and Official Capacity Claims**

As we have previously explained, § 1983 claims against a governmental entity

such as the Clark County Sheriff's Department require proof that a municipal custom,

practice, or policy was the "moving force" behind the plaintiff's constitutional injury.

*Estate of Sims*, 506 F.3d at 514.  Here, Plaintiffs' complaint alleges only that the Clark

County Sheriff's Department is a law enforcement agency responsible for ensuring the

legal conduct of its employees, that Clark County Sheriff Jamey Noel was a policymaker

for the Department, and that Plaintiffs called the Department on two occasions in August 2020 to assert complaints about Mr. Reiter's mother.  Plaintiffs never allege that any custom, practice, or policy of the Clark County Sheriff's Department and/or Sheriff Noel caused their claimed constitutional harms.  Accordingly, Plaintiffs' claim against the Clark County Sheriff's Department must be dismissed.  Likewise, Plaintiffs' official capacity claims against Defendants Noel, Maples, Haehl, Tenney, Collett, Burton, and Kramer, which are duplicative of the claims against the municipal entity, also fail.[4]  *See Graham*, 473 U.S. at 165–66; *Moreno-Avalos*, 2017 WL 57850, at *2.

### B.  Individual Capacity Claims Against Defendants Noel, Maples, Tenney, Collett, and Basham

Defendants Noel, Maples, Tenney, Collect, and Basham argue that any individual capacity claims against them fail because the complaint contains no allegations of their personal involvement in the alleged constitutional violations nor any allegations that they knew of or consented to the challenged conduct.  Upon review of Plaintiffs' complaint, the only facts asserted in the complaint as to these Defendants are their job titles and responsibilities.  These allegations are wholly insufficient to give rise to a plausible inference that any of these Defendants personally participated in the alleged constitutional deprivations such that they could be held individually liable under § 1983. In response to this motion to dismiss, Plaintiffs attempt to add new allegations against these Defendants to cure the apparent deficiencies in their complaint, but this effort fails

---

[4] We previously dismissed the official capacity claims alleged against Defendants Basham and Bowyer for the reasons set forth in Part III, *supra.*

for the reasons we have previously explained.  *See Thomason*, 888 F.2d at 1205

(recognizing that plaintiffs may not amend their complaints in their briefs in opposition to

a motion to dismiss).  Accordingly, Plaintiffs' individual capacity claims against

Defendants Noel, Maples, Tenney, Collett, and Basham must be dismissed.

### C.  Individual Capacity Claims Against Defendant Haehl

In addition to alleging that Defendant Haehl is an employee at the Clark County

Sheriff's Department "responsible for lawfully conducted investigations as a 'Major' for

the agency," (Compl. ¶ 16), Plaintiffs allege that Mr. Reiter spoke with Major Haehl on

two occasions.  In one conversation, Major Haehl told Mr. Reiter that Reiter could pick

up the property that had been seized from his residence at any time.  During the other

conversation, Plaintiffs allege only that Mr. Reiter asked Major Haehl if the

impound/storage fees could be waived.  Nothing about these obviously innocuous

conversations raises a plausible inference that Major Haehl violated Plaintiffs'

constitutional rights.  While the Rule 8 pleading standard does not require "detailed

factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted).

Plaintiffs' allegations as to Major Haehl do not meet this standard and their attempt to add

new factual allegations in their response brief fails for the same reasons discussed above.

Accordingly, Plaintiffs' individual capacity claims against Defendant Haehl cannot

survive dismissal.

### D.    Individual Capacity Claims Against Defendant Kramer

Plaintiffs allege that, during the September 30, 2020 search of their residence, Ms. Napier repeatedly offered to give unidentified law enforcement officers the items that Mr. Reiter's uncle had on his person at the time of his death before she was finally allowed to turn over those documents to Defendant Kramer, a Clark County Sheriff's Deputy. The only other facts alleged as to Deputy Kramer are that he produced the search warrant and explained it to Plaintiffs approximately four hours into the search of their residence. Nothing about these allegations supports a plausible inference that Deputy Kramer violated Plaintiffs' constitutional rights. To the extent that Plaintiffs argue that they should have been shown the warrant earlier, there is no such requirement. *See*, *e.g.*, *United States v. Sims*, 553 F.3d 580, 584 (7th Cir. 2009) ("As a matter of prudence, police will show a search warrant to the person whose premises are to be searched if he questions their authority to conduct the search. But they do not have to."). Moreover, for the same reasons set forth above, we will not consider any additional allegations against Deputy Kramer set forth in Plaintiffs' response brief. Accordingly, Plaintiffs' individual capacity claims against Defendant Kramer must be dismissed.

### E. Individual Capacity Claims Against Defendant Bowyer

In addition to alleging that Defendant Bowyer is an employee of the Clark County Prosecutor's Office responsible for a "lawfully conducted investigation," (Compl. ¶ 21), Plaintiffs allege only that Mr. Bowyer told Mr. Reiter that: (1) Clark County Prosecutor Jeremy Mull would not be filing any criminal charges; (2) the property seized from Plaintiffs' residence had been released back to Reiter; (3) Reiter could pick up the property at any time; and (4) Prosecutor Mull had instructed the Clark County Sheriff's

22

Office "what to do."  None of these allegations raises a plausible inference that Mr.

Bowyer violated Plaintiffs' constitutional rights and, again, we will not consider any

additional allegations raised in Plaintiffs' response brief.  Accordingly, Plaintiffs'

individual capacity claims against Mr. Bowyer cannot survive dismissal.

### F.  Individual Capacity Claims Against Defendant Burton

Plaintiffs allege that Defendant Burton is an employee of the Clark County

Sheriff's Department "responsible for enforcing traffic laws as a 'Captain' for the agency,"

(Compl. ¶ 19), who responded to Plaintiffs' August 25, 2020 emergency 911 call.  During

Captain Burton's response to that call, he personally observed Mr. Reiter's mother open

the gate to a horse pasture and attempt to pour antifreeze into the horses' drinking water.

Captain Burton took no legal action against her, instead directing Plaintiffs to move their

animals away to keep them safe.  *Id.* ¶¶ 39, 40, 42, 44, 46.  That same day, Captain

Burton was provided documentation establishing Plaintiffs' rightful ownership of the

disputed property, "order[ing]" all concerned to follow Mr. Reiter's uncle's will "as it

read" and directing Plaintiffs to "keep the motorcycle and trailer safe" at their residence.

*Id.* ¶ 45.  The only other allegations as to Captain Burton's actions are that a few weeks

later, on September 18, 2020, he telephoned Mr. Reiter to ask if the motorcycle and

trailer were still "safe" at Plaintiffs' residence, stating that "weird stuff might be

happening with [Reiter's mother] showing some sort of papers to the police about the

motorcycle."  *Id.* ¶¶ 47–48.  In response to Mr. Reiter's request that the Clark County

Sheriff's Department take possession of the motorcycle and trailer until his uncle's affairs

were settled by probate court, Captain Burton directed Mr. Reiter to retain possession of those items at his home. *Id.* ¶¶ 49–51.

It is not entirely clear what constitutional violations Plaintiffs are alleging based on these facts. To the extent they are asserting that Captain Burton's failure to arrest Mr. Reiter's mother for attempting to poison their horses violated their constitutional rights, any such claim fails because, as Defendants argue, private citizens have no legally cognizable interest in the arrest or prosecution of a third party. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicial cognizable interest in the prosecution or nonprosecution of another."). None of the other factual allegations, to wit, that Captain Burton directed Plaintiffs to follow the will as written and to keep the disputed property at their residence, are sufficient to state a legally cognizable § 1983 claim against Captain Burton. Nothing raised by Plaintiffs in their response alters our analysis. For these reasons, Plaintiffs' individual capacity claims against Defendant Burton must be dismissed.

## VII.   Conclusion

For the reasons detailed above, the Court rules as follows:

- Motion for Joinder in Argument Asserted by Clark County Prosecutor Jeremy Mull [Dkt. 62] filed by Defendants Basham and Bowyer is **GRANTED**;

- Motion to Strike Response [Dkt. 83] filed by Defendant Mull is **GRANTED**;

- Motion to Dismiss [Dkt. 47] filed by Defendant Jeremy Mull is **GRANTED**;

- Motion to Dismiss [Dkt. 49] filed by Defendants Clarksville Police Department, Ryan Roederer, and Zachary Skaggs is **GRANTED**;

- Motion to Dismiss [Dkt. 60] filed by Defendants Clark County Sheriff's Department, Laura Basham, Donnie Bowyer, Randy Burton, Mark Collett, James Haehl, Bradley Kramer, Scott Maples, Jamey Noel, and Jerold Tenney is **<u>GRANTED</u>**; and

- Motion to Dismiss [Dkt. 53] filed by Defendants Floyd County Sheriff's Department, Kenneth Haas, Troy McDaniel, and Brad Scott is **<u>DENIED IN PART</u>** only as to the claims alleged against <u>Defendant McDaniel</u> and **<u>GRANTED</u>** in all other respects.

The case shall proceed accordingly.

The clerk is directed to correct the spelling of the surnames of Defendants Troy McDaniel and Donnie Bowyer in the case caption on the Court's docket.

IT IS SO ORDERED.

Date: _____8/11/2023_____          _Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

CHRISTOPHER REITER
7119 Main Street NE
Lanesville, IN 47136

TIFFANY NAPIER
7119 Main Street NE
Lanesville, IN 47136

Alexander Robert Carlisle
OFFICE OF THE ATTORNEY GENERAL
Alexander.Carlisle@atg.in.gov

Curtis Matthew Graham
FREEMAN MATHIS & GARY, LLP
cgraham@fmglaw.com

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov

Patrick Muldoon
BARNES MALONEY PLLC
pmuldoon@sbmkylaw.com

Justin M. Schaefer
BARNES MALONEY PLLC
jschaefer@sbmkylaw.com

Pamela G. Schneeman
Knight Hoppe Kurnik & Knight, Ltd.
pschneeman@khkklaw.com

James S. Stephenson
Knight Hoppe Kurnik & Knight, LTD
jstephenson@khkklaw.com